1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MICHAELA WHITNEY KELLNER,   ) Case No. SACV 14-1340-JPR
                             )
             Plaintiff,  )
                             ) **MEMORANDUM OPINION AND ORDER**
         vs.         ) **AFFIRMING COMMISSIONER**
                             )
CAROLYN W. COLVIN, Acting  )
Commissioner of Social      )
Security,                 )
                             )
              Defendant.  )
_____ )

18  **I.   PROCEEDINGS**

19      Plaintiff seeks review of the Commissioner's final decision
20  denying her application for supplemental security income ("SSI").
21  The parties consented to the jurisdiction of the undersigned U.S.
22  Magistrate Judge under 28 U.S.C. § 636(c).  This matter is before
23  the Court on the parties' Joint Stipulation, filed June 26, 2015,
24  and Plaintiff's Reply, filed June 29, which the Court has taken
25  under submission without oral argument.  For the reasons stated
26  below, the Commissioner's decision is affirmed and judgment is
27  entered in the Commissioner's favor.
28

## II.   BACKGROUND

Plaintiff was born in 1986.  (Administrative Record ("AR") 195.)  She graduated from college in 2008.  (AR 235.)  Plaintiff previously worked part time as a retail salesperson and, as part of a school work-study program, a painting-and-drawing technician and an assistant to her school's English department.  (AR 227, 275, 293-96.)

Plaintiff has twice applied for benefits; both times the ALJ found her not disabled and she appealed to this Court.  First, on February 13, 2009, Plaintiff filed applications for Disabled Adult Child benefits ("DAC")[1] and SSI.  (AR 68-69.)  She alleged that she had been unable to work since June 6, 2007, because of "compressed discs in the neck," "degeneration in neck," nerve damage in her left arm and leg, shoulder tendonitis, migraines, nonverbal learning disorder, post-traumatic-stress disorder, depression, and other medical conditions, most of which were allegedly caused by a fall down some stairs in February 2007.  (AR 78-80, 226.)  After Plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge.  (AR 76.)  A hearing was held on June 22, 2010, at which Plaintiff, who was represented by counsel, testified, as did a medical expert, Joseph E. Jensen, and a vocational expert.  (Id.)  On October 8, 2010, the ALJ issued a written decision finding Plaintiff not

_____

[1]  DAC benefits are available for a disabled child of a person who is deceased or drawing Social Security disability or retirement benefits.  42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a)(5).  To be eligible for DAC benefits, an applicant who is 18 years old or older must have become disabled before age 22.  42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a)(5).

disabled.  (AR 76-86.)  Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on July 18, 2012. Kellner v. Colvin, No. SACV 12-1457-JPR, 2013 WL 3200581, at *1 (C.D. Cal. June 24, 2013), aff'd, 603 F. App'x 592 (9th Cir. 2015).  Plaintiff appealed the Commissioner's final decision to this Court.  Id.

Meanwhile, in late October 2010, just a few weeks after the first ALJ found her not disabled, Plaintiff filed a second round of applications for DAC and SSI.  (AR 19, 88-91, 195.)  Plaintiff alleged that she had been unable to work since February 1, 2007, because of cervical dystonia,[2] spinal-cord injury, "SCIWORA,"[3] and a learning disorder.  (AR 195, 366.)  After her applications were denied, Plaintiff requested a hearing before an ALJ (AR 108).  A hearing was held on January 9, 2013, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert and a second medical expert.[4]  (AR 37-64.)  At the hearing, Plaintiff amended her onset date to October 9, 2010, the day after the first ALJ had issued his opinion.  (AR 39-40.)

On February 27, 2013, the second ALJ issued a written decision finding Plaintiff not disabled for purposes of SSI.  (AR

---

[2]  Dystonia is a movement disorder that causes involuntary contractions of the muscles, resulting in twisting and repetitive movements that are sometimes painful.  Dystonia, MedlinePlus, http://www.nlm.nih.gov/medlineplus/dystonia.html (last updated Sept. 25, 2015).

[3]  "SCIWORA" is an acronym for spinal cord injury without radiographic abnormality.  (See AR 432.)

[4]  The medical expert opined that Plaintiff had "no limitations from a psychiatric standpoint" but did not offer an opinion as to Plaintiff's physical limitations.  (AR 55.)

19-32.)  The ALJ also found that because Plaintiff was more than 22 years old on the amended onset date, she had effectively withdrawn her application for DAC.[5]  (AR 19.)  On March 15, 2013, Plaintiff requested review of the ALJ's decision.  (AR 15.)

On June 24, 2013, this Court affirmed the first ALJ's decision, see Kellner, 2013 WL 3200581, and Plaintiff appealed to the Ninth Circuit.  On June 27, 2014, the Appeals Council denied Plaintiff's request for review of the second ALJ's decision.[6]

---

[5]  Plaintiff does not challenge the ALJ's finding that amending her onset date effectively withdrew her application for DAC.  (See generally J. Stip.)

[6]  The Appeals Council order included in the administrative record stated that it was "only about [Plaintiff's] claim for child's insurance benefits" and the Council would "send [Plaintiff] a separate letter about [her] claim for supplemental security income benefits."  (AR 1.)  On September 29, 2015, the Court directed the Commissioner to submit the Appeals Council order pertaining to the denial of SSI benefits.  On October 6, 2015, the Commissioner did so, but she admitted that because of a "clerical error," it likely was never mailed to Plaintiff. (Def.'s Resp. Order at 1, 2 n.1, & Ex.)  On October 13, 2015, Plaintiff filed a response, arguing that she never exhausted her administrative remedies and the Court therefore lacks jurisdiction over this appeal.  (Resp. Ct. Re: Exhaustion at 2.)

Plaintiff's argument fails.  As long as a claim for benefits was presented to the Social Security Administration, the Commissioner may waive both exhaustion and the 60-day time period for filing a complaint.  See Mathews v. Eldridge, 424 U.S. 319, 328 & n.9 (1975); see also Bowen v. City of New York, 476 U.S. 467, 478 & n.10, 482-83 (1986).  Plaintiff filed her complaint on August 26, 2014, arguing that the Appeals Council's June 27 order made the ALJ's decision the Commissioner's final decision and that the Court has jurisdiction over this appeal (Compl. at 1-2); the parties repeated those assertions in their Joint Stipulation (J. Stip. at 4).  In her response to the Court's September 29 Order, moreover, the Commissioner asserts that Plaintiff adequately exhausted her administrative remedies notwithstanding the Appeals Council's apparent failure to send the second letter. (Def.'s Resp. Order at 2.)  Indeed, by October 2015, when

4

(AR 1-4.)  Plaintiff then appealed the second ALJ's decision to this Court, challenging only the denial of SSI.

On May 12, 2015, the Ninth Circuit affirmed the Court's order upholding the first ALJ's decision, see Kellner v. Colvin, 603 F. App'x 592 (9th Cir. 2015), and the mandate issued on July 7, 2015, Kellner v. Colvin, No. 13-56357 (9th Cir. July 7, 2015) (mandate).

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from

Plaintiff first argued that her claims were unexhausted, the parties had already been litigating this case for more than a year.  Thus, even if the Appeals Council's failure to mail the second notice somehow prevented Plaintiff from exhausting her claims, the Commissioner (and Plaintiff, for that matter) clearly waived the issue.

1  the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715,

2  720 (9th Cir. 1998).  "If the evidence can reasonably support

3  either affirming or reversing," the reviewing court "may not

4  substitute its judgment" for the Commissioner's.  <u>Id.</u> at 720-21.

5  **IV.   THE EVALUATION OF DISABILITY**

6       People are "disabled" for purposes of receiving Social

7  Security benefits if they are unable to engage in any substantial

8  gainful activity owing to a physical or mental impairment that is

9  expected to result in death or which has lasted, or is expected

10 to last, for a continuous period of at least 12 months.  42

11 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257

12 (9th Cir. 1992).

13       A.   <u>The Five-Step Evaluation Process</u>

14       An ALJ follows a five-step sequential evaluation process to

15 assess whether someone is disabled.  20 C.F.R. § 416.920(a)(4);

16 <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as

17 amended Apr. 9, 1996).  In the first step, the Commissioner must

18 determine whether the claimant is currently engaged in

19 substantial gainful activity; if so, the claimant is not disabled

20 and the claim must be denied.  § 416.920(a)(4)(i).  If the

21 claimant is not engaged in substantial gainful activity, the

22 second step requires the Commissioner to determine whether the

23 claimant has a "severe" impairment or combination of impairments

24 significantly limiting her ability to do basic work activities;

25 if not, a finding of not disabled is made and the claim must be

26 denied.  § 416.920(a)(4)(ii).  If the claimant has a "severe"

27 impairment or combination of impairments, the third step requires

28 the Commissioner to determine whether it meets or equals an

6

impairment in the Listing of Impairments ("Listing") set forth at

20 C.F.R. part 404, subpart P, appendix 1; if so, disability is

conclusively presumed and benefits are awarded.

§ 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments

does not meet or equal one in the Listing, the fourth step

requires the Commissioner to determine whether the claimant has

sufficient residual functional capacity ("RFC")[7] to perform her

past work; if so, she is not disabled and the claim must be

denied.  § 416.920(a)(4)(iv).  The claimant has the burden of

proving she is unable to perform past relevant work.  Drouin, 966

F.2d at 1257.  If the claimant meets that burden, a prima facie

case of disability is established.  Id.  If that happens or if

the claimant has no past relevant work, the Commissioner then

bears the burden of establishing that the claimant is not

disabled because she can perform other substantial gainful work

available in the national economy.  § 416.920(a)(4)(v).  That

determination comprises the fifth and final step in the

sequential analysis.  § 416.920; Lester, 81 F.3d at 828 n.5;

Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since October 9, 2010, the alleged

onset date.  (AR 21.)  At step two, she found that Plaintiff had

the severe impairments of "status post fall in 2007 with mild

---

[7] RFC is what a claimant can do despite existing exertional
and nonexertional limitations.  § 416.945; see Cooper v.
Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  cervical spine degenerative disc disease, without evidence of
2  radiculopathy; left shoulder tendonitis; and early bilateral knee
3  degenerative joint changes." (AR 22.) She found that
4  Plaintiff's alleged urinary problems, asthma, low-back
5  impairment, and mental impairments were either not medically
6  determinable or nonsevere, findings Plaintiff does not challenge.
7  (AR 22-25.) At step three, the ALJ determined that Plaintiff's
8  impairments did not meet or equal any of the impairments in the
9  Listing. (AR 25-26.) At step four, the ALJ found that Plaintiff
10  had the RFC to perform sedentary work with several additional
11  limitations. (AR 26.) Based on the VE's testimony, the ALJ
12  found that Plaintiff could perform two jobs that existed in
13  significant numbers in the national economy. (AR 31.) She
14  therefore concluded that Plaintiff was not disabled. (AR 32.)

15  **V.   DISCUSSION**

16       Plaintiff contends that the ALJ failed to properly consider
17  the opinion of her treating physician, Dr. Khang Lai. (J. Stip.
18  at 5.) She also contends that the "doctrine of continuing non-
19  disability" set forth in Chavez v. Bowen, 844 F.2d 691, 693 (9th
20  Cir. 1988), doesn't apply because her "pattern of treatment
21  demonstrates a worsening or deepening of the impairments
22  afflicting [her]" (J. Stip. at 9) and because "Kellner I was not
23  judicially final on the date of the ALJ decision" (Reply at 2).
24  The Commissioner argues that the presumption of nondisability
25  applies because Plaintiff failed to show changed circumstances
26  indicating greater disability than existed on the date of the
27  earlier ALJ decision, October 8, 2010. (J. Stip. at 12.) She
28  further contends that, in any event, the ALJ "gave several valid

8

reasons for rejecting" Dr. Lai's "conclusory, unsupported and contradicted opinion." (Id. at 17).[8]

A.   Applicable Law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's.  Id.

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.  § 416.927(c)(2). If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors.  § 416.927(c)(2)-(6).

---

[8]   In the Joint Stipulation, Plaintiff argued that the ALJ didn't properly consider her testimony (J. Stip. at 5, 21-25), but in her Reply, she conceded that "in light of the Ninth Circuit decision in Kellner I, she cannot prevail on this issue" (Reply at 3).  As such, the Court does not address it.

When a treating physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31).  When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.  Id. (citing Lester, 81 F.3d at 830-31).  The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things.  § 416.927(c)(3)-(6).  These factors also determine the weight afforded the opinions of nonexamining physicians.  § 416.927(e).

B.   Relevant Facts

On June 15, 2009, Dr. Lai completed a one-page physical-capacities-evaluation check-off form.  (AR 507.)  He checked the boxes indicating that Plaintiff could sit, stand, or walk for one hour at a time, for a total of two hours each in an eight-hour day.  (Id.)  She could occasionally lift or carry five pounds but never more than that.  (Id.)  Plaintiff could never bend, squat, crawl, climb, or perform activities involving unprotected heights, moving machinery, marked changes in temperature or humidity, driving automotive equipment, or exposure to dust, fumes, or gases.  (Id.)  She could not use arm controls or reach with either arm and could not use leg controls with her left leg. (Id.)  Dr. Lai did not list a diagnosis or make any notes in the section for "remarks."  (Id.)

On June 16, 2009, Dr. Lai completed an application for discharge of Plaintiff's student loans based on total and

10

permanent disability.  (AR 505-06.)  He listed Plaintiff's
diagnoses as "SCWIORA (spinal cord injury)" and cervical and
lumbar spondylosis.  (AR 506.)  Although just one day earlier he
had indicated that Plaintiff could sit, stand, or walk for one
hour at a time each, he wrote that Plaintiff could stand for less
than 15 minutes and had "limited sitting [and] standing
tolerance" of less than 20 minutes.  (Id.)

On October 8, 2010, the first ALJ accorded little weight to
Dr. Lai's opinions, finding that they were "not consistent with
the objective medical evidence of record," which showed "no
neurological deficits that would preclude all competitive work"
and "no evidence of a low back impairment that would preclude all
bending."  (AR 83.)  The ALJ accorded "greatest weight" to the
opinion of orthopedic surgeon Jensen, who had testified at the
hearing.  (AR 82.)  In accordance with Dr. Jensen's opinion
(id.), the ALJ concluded that Plaintiff could perform a limited
range of sedentary work, involving

> lifting and/or carrying 10 pounds occasionally, less than
> 10 pounds frequently; stand and walk 2 hours; sit for 6
> hours; should have opportunity every 60 minutes at the
> worksite to change positions briefly for up to 5 minutes;
> occasional climbing of ramps and stairs; occasional
> stooping, crouching, kneeling, and crawling; occasional
> bilateral operation of pedals; upper extremities gross
> and fine manipulation bilaterally limited to frequent as
> opposed to constant; avoid reaching with the left upper
> extremity at or above shoulder level; avoid constant neck
> motion (flexion, extension or rotation) but can do it on

11

1    a frequent basis; avoid unprotected heights or moving
2    equipment; and avoid driving.
3    (AR 81.)  After the Appeals Council declined Plaintiff's request
4    for review, she appealed the ALJ's October 2010 decision to this
5    Court.
6         On February 4, 2011, while the appeal of the October 2010
7    decision was pending and after Plaintiff had filed new
8    applications for benefits, Dr. F. Kalmar, who specialized in
9    physical medicine,[9] reviewed Plaintiff's medical records and
10   completed a physical-residual-functional-capacity assessment.
11   (AR 748-53, 766-68.)  Dr. Kalmar listed Plaintiff's diagnoses as
12   cervical-spine residuals following a fall in 2007.  (AR 748.)  He
13   opined that she could frequently and occasionally lift and carry
14   10 pounds, stand and walk at least two hours and sit at least six
15   hours in an eight-hour day, had limited ability to push and pull
16   with her lower extremities, and needed to avoid rough surfaces
17   and terrain.  (AR 749.)  She could frequently balance;
18   occasionally climb ramps and stairs, stoop, kneel, crouch, and
19   crawl; and never climb ladders, ropes, and scaffolds.  (AR 750.)
20   She could not reach above shoulder level with her left arm but
21   had no other manipulative limitations.  (Id.)  Finally, Plaintiff
22   had to avoid all exposure to hazards, moderate exposure to fumes
23   and dust, and concentrated exposure to extreme cold.  (AR 751.)
24   On April 1, 2011, Dr. J. Hartman, who specialized in
25
26        9  Dr. Kalmar's electronic signatures include a medical
     specialty code of 34, indicating physical medicine.  (AR 752);
27   see Program Operations Manual System ("POMS") DI 24501.004, U.S.
     Soc. Sec. Admin. (May 5, 2015), http://policy.ssa.gov/poms.nsf/
28   lnx/0424501004.

ophthalmology,[10] reviewed Plaintiff's medical records and affirmed Dr. Kalmar's findings.  (AR 782-84.)

On January 4, 2013, Dr. Lai completed another one-page physical-capacities-evaluation check-off form.  (AR 786.)  He wrote that Plaintiff had a history of "spinal cord injury" with "dystonia/pain" and "severe dysfunction."  (Id.)  He checked the boxes indicating that Plaintiff could sit, stand, or walk for one hour at a time, for a total of one hour each in an eight-hour day.  (Id.)  She could occasionally lift and carry up to five pounds but never more than that, and she could occasionally bend and squat but never crawl or climb.  (Id.)  Her ability to drive was mildly restricted, and she could not be exposed to unprotected heights, moving machinery, marked changes in temperature, or dust, fumes, and gasses.  (Id.)  Plaintiff could use her upper extremities for fine manipulation but not for "simple grasping," "pushing & pulling of arm controls," or reaching.  (Id.)  She could not use her feet for repetitive motions, such as pushing and pulling of leg controls.  (Id.)

On February 27, 2013, the second ALJ issued her decision finding Plaintiff not disabled.  (AR 19-32.)  In doing so, she accorded "good weight" to Dr. Jensen's findings but found that his limitation on the use of foot pedals was not warranted by the medical record.  (AR 29.)  She accorded "some weight" to Drs. Kalmar's and Hartman's opinions, finding that they were largely

---

[10]   Dr. Hartman's electronic signatures include a medical specialty code of 28, indicating ophthalmology.  (AR 784); see POMS DI 24501.004, U.S. Soc. Sec. Admin. (May 5, 2015), http://policy.ssa.gov/poms.nsf/lnx/ 0424501004.

consistent with the objective medical evidence except that "no severe medically determinable impairments" would warrant "limitations in the exposure to dusts, fumes, gases and other pulmonary irritants, or . . . the need to avoid rough surfaces or terrain." (AR 28.) The ALJ accorded "little weight" to Dr. Lai's January 2013 opinion, finding that his treatment notes and examination findings "d[id] not support the limitations given." (AR 28-29.) She also found that Dr. Lai's earlier opinions were "sufficiently discussed in the prior [ALJ] decision" and that "no additional evidence . . . substantially alters the weight given to" them. (AR 29.) The ALJ acknowledged, however, that it was "uncontradicted" that Plaintiff was "not capable of performing a full workweek on a regular and continuous basis without limitation" because of her cervical-spine and left-shoulder impairments. (AR 27.) She therefore concluded that Plaintiff could perform only a limited range of sedentary work, as follows:

> [She can] occasionally lift 10 pounds, frequently lift
> less than 10 pounds; sit 6 hours out of an 8-hour day;
> stand or walk 2 hours out of an 8-hour day; based on her
> subjective complaints she must be able to change
> positions 1 to 3 minutes every hour; she can occasionally
> climb stairs, bend, balance, stoop, kneel, crouch, or
> crawl; is precluded from climbing ladders, ropes, or
> scaffolding; she is precluded from working at unprotected
> heights, around dangerous machinery, or driving
> automotive equipment on the job; she can perform no
> constant neck motion (flexion, extension, or rotation)
> but frequent is okay; and with the left upper extremity

1    she can do occasional overhead reaching.

2  (AR 26.)

3       On June 24, 2013, this Court affirmed the first ALJ's

4  decision, finding that his discounting of Dr. Lai's opinions and

5  Plaintiff's credibility were supported by substantial evidence.

6  See Kellner, 2013 WL 3200581.  Plaintiff appealed, challenging

7  only the ALJ's credibility finding; on May 12, 2015, the Ninth

8  Circuit affirmed this Court's judgment.  Kellner, 603 F. App'x

9  592.

10       C.   Discussion

11       As an initial matter, Plaintiff might be correct that, under

12  the Social Security Administration's interpretation of Chavez,

13  the presumption of continuing nondisability did not apply to her

14  claim at the time of the second ALJ's decision.  When a previous

15  ALJ has issued a "final decision" finding a claimant not

16  disabled, an ALJ considering a subsequent claim regarding an

17  unadjudicated period must "apply a presumption of continuing

18  nondisability and determine that the claimant is not disabled"

19  unless the claimant rebuts the presumption.  SSAR 97-4(9), 1997

20  WL 742758, at *3 (Dec. 3, 1997); see also Chavez, 844 F.2d at 693

21  ("The principles of res judicata apply to administrative

22  decisions, although the doctrine is applied less rigidly to

23  administrative proceedings than to judicial proceedings.").  The

24  Social Security Administration's Program Operations Manual System

25  ("POMS") states that "[a]n ALJ or [Appeals Council] decision

26  becomes final," and therefore gives rise to the presumption, "as

27  of the date of notice [of the decision] unless . . . [i]t is

28  timely appealed (or a civil action is filed)."  POMS DI

52755.010.B.4, U.S. Soc. Sec. Admin. (Sept. 2, 2014),
http://policy.ssa.gov/poms.nsf/lnx/0452755010 (explaining "How
the Chavez AR Applies"); see also Lockwood v. Comm'r Soc. Sec.
Admin., 616 F.3d 1068, 1073 (9th Cir. 2010) (noting that agency
interpretations in POMS are "entitled to respect, but "only to
the extent that [they] have the 'power to persuade'" (citation
omitted)); cf. § 416.1481 ("The Appeals Council's decision, or
the decision of the administrative law judge if the request for
review is denied, is binding unless you or another party file an
action in Federal district court, or the decision is revised.").
A claimant may rebut the presumption of nondisability by showing
"changed circumstances" indicating a greater disability.  Chavez,
844 F.3d at 693.

Here, Plaintiff appealed the first ALJ's decision to this
Court, and that appeal was still pending when the second ALJ
issued her decision.  Under the Administration's interpretation
in POMS, therefore, the decision was not yet "final" and the ALJ
was not required to apply the presumption.  Perhaps because of
that, the second ALJ, who was aware of the proceedings in this
Court (see AR 39), nowhere discussed Chavez, the Acquiescence
Ruling, or the presumption of continuing nondisability (see AR
16-32).[11]  Instead, she reviewed the new medical evidence,

---

[11]  Moreover, a consulting psychiatrist, who was presumably
familiar with the Administration's rules, see SSR 96-6P, 1996 WL
374180, at *2 (July 2, 1996) (noting that state-agency medical
and psychological consultants are "experts in the Social Security
disability programs"), rendered an opinion that among other
things recommended "making sure that no appeals are pending re:
ALJ decision" because if so, the Acquiescence Ruling would "not
apply yet" (AR 765; see also AR 763).

specifically adopted many of the first ALJ's findings, and made an independent decision.[12]   (See id.)

     In any event, reversal is not warranted because the ALJ properly assessed Dr. Lai's opinions.  As an initial matter, the ALJ's RFC finding accommodates many of the limitations in Dr. Lai's most recent opinion.  For example, the ALJ found that Plaintiff could stand and walk for a total of only two hours in an eight-hour day (AR 26), which is largely consistent with Dr. Lai's finding that she could stand for a total of one hour and walk for a total of one hour in an eight-hour day (AR 786).  The ALJ found that Plaintiff could occasionally bend, stoop, kneel, and crouch (AR 26), which appears consistent with Dr. Lai's finding that she could occasionally bend and squat (AR 786).  The ALJ also found that Plaintiff could not work around unprotected heights or dangerous machinery; drive automotive equipment on the job; or climb ladders, ropes, or scaffolds (AR 26), which is consistent with Dr. Lai's finding that Plaintiff was totally restricted from activities involving unprotected heights or being around moving machinery; "mild[ly]" restricted from driving automotive equipment; and precluded from climbing (AR 786).  And in some respects, the ALJ's RFC finding was more limited that Dr.

_____

[12]   Even if the presumption of continuing disability were applicable here, Plaintiff likely would have rebutted it because she alleged at least one impairment, cervical dystonia, that was not considered by the first ALJ.  (Compare AR 226 with AR 366); see SSAR 97-4(9), 1997 WL 742758, at *3 ("changed circumstances" rebutting presumption of disability include "the alleged existence of an impairment(s) not previously considered"); Lester, 81 F.3d at 827 (res judicata does not apply when "the claimant raises a new issue, such as the existence of an impairment not considered in the previous application").

Lai's opinion, in that it also precluded Plaintiff from
performing "constant neck motion."[13]   (AR 26.)

To the extent the ALJ rejected Dr. Lai's opinions, moreover,
she provided legally sufficient reasons for doing so.  First, the
ALJ specifically adopted the portions of the first ALJ's decision
according "little weight" to Dr. Lai's earlier opinions (AR 29) —
findings that this Court affirmed, see Kellner, 2013 WL 3200581,
at *3-12, and that Plaintiff did not challenge on appeal to the
Ninth Circuit, see Kellner, 603 F. App'x 592.  Second, as
discussed below, she gave specific and legitimate reasons for
according "little weight" to Dr. Lai's new, controverted January
2013 opinion.  (AR 28.)

The ALJ discounted Dr. Lai's January 2013 opinion because
Plaintiff's "signs on physical examinations have not changed."
(AR 29.)  Indeed, although Dr. Lai found that Plaintiff was
significantly limited by her impairments, examination and test
results do not support those findings.  As summarized in this
Court's previous opinion, Plaintiff's lumbar- and thoracic-spine
MRIs, nerve-conduction studies, and electromyography tests dating
from before her amended onset date were consistently normal.  See
Kellner, 2013 WL 3200581, at *4-9 (summarizing medical evidence);
(see also AR 82 (first ALJ's findings regarding normal test
results), 567 (normal lumbosacral-spine MRI), 568 (normal
thoracic-spine MRI)).  Plaintiff's May 2007 cervical-spine MRI,

---

[13]   Plaintiff argues that the ALJ "ignor[ed]" Plaintiff's
"neck tenderness and spasms" (J. Stip. at 9), but she in fact
accommodated those symptoms by finding that Plaintiff had a
limited ability to move her neck (AR 26-27).

moreover, showed only "minor" cervical degenerative-disc changes
without any nerve-root impingement (AR 569), while a January 2009
cervical-spine MRI was normal, showing no disc herniation or
protrusion, no nerve-root impingement, and normal spinal-cord
signal (AR 572).  A June 2008 left-shoulder MRI showed
tendinosis, a possible partial tear, and trace fluid.  (AR 565-
66.)  And as the ALJ noted (AR 29), the newer evidence is
similarly benign: a September 2010 EMG was normal, with "no
evidence for a lower motor neuron disturbance affecting the left
upper extremity."  (AR 731; see also AR 745 (Dec. 2010, doctor's
observation that EMG was normal, Plaintiff's symptoms were
stable, and her biggest complaint at that time was dystonia).)[14]
The ALJ permissibly discounted Dr. Lai's opinion on this basis.
See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th
Cir. 2004) ("an ALJ may discredit treating physicians' opinions
that are conclusory, brief, and unsupported by the record as a
whole . . . or by objective medical findings"); see also Molina
v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (ALJ may
permissibly reject check-off reports that do not contain
explanation of basis for conclusions).

    The ALJ also found that Dr. Lai's treatment notes did not
support his opinion that Plaintiff had extreme workplace
limitations.  See Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir.
2014) ("A conflict between treatment notes and a treating

---

[14]  Dystonia is a disorder characterized by involuntary
muscle contractions that cause slow repetitive movements or
abnormal postures.  Dystonias: Fact Sheet, National Inst. of
Neurological Disorders and Stroke, http://www.ninds.nih.gov/
disorders/dystonias/detail_dystonias.htm (July 6, 2015).

1  provider's opinions may constitute an adequate reason to

2  discredit the opinions of a treating physician or another

3  treating provider."); <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>,

4  574 F.3d 685, 692–93 (9th Cir. 2009) (holding that conflict with

5  treatment notes is specific and legitimate reason to reject

6  treating physician's opinion).  As the ALJ found (AR 28-29), Dr.

7  Lai's treatment notes show that Plaintiff complained of pain but

8  denied weakness or muscle atrophy and had a normal gait.  (<u>See</u> AR

9  582 (Jan. 2010, Dr. Lai finding that Plaintiff had neck and back

10  tenderness and neck spasm and complained of chronic neck pain but

11  denied weakness or muscle atrophy, moved all her extremities, and

12  had normal gait, no point tenderness along spine, and unlimited

13  range of motion), 816 (Jan. 2012, Dr. Lai finding neck tenderness

14  and spasm but "no point tenderness along the spine," unlimited

15  range of motion, and normal gait; Plaintiff reported worsening

16  shoulder condition but denied weakness or muscle atrophy and

17  reported significant improvement in back and neck pain after

18  treatment.))[15]  Moreover, as the ALJ found (AR 28-29), although

19  Plaintiff reported to the ALJ that her pain was worsening (<u>see</u> AR

20

21        [15]  Plaintiff argues that the ALJ "relied on denials of

22  atrophy that occurred prior to the date of the prior ALJ
   decision," in October 2010, and that were "not relevant to the

23  issue of disability after" that date.  (J. Stip. at 9.)  But Dr.
   Lai's recent notes consist mostly of records of his procedures,

24  such as trigger-point and occipital-nerve injections and radio-
   frequency thermal coagulations, which contain very few clinical

25  findings.  Indeed, after October 2010, Dr. Lai appears to have
   completed only one treatment note showing any physical-

26  examination findings, which, as discussed above, reflected that
   Plaintiff denied weakness or muscle atrophy, had a normal gait,

27  "[m]oves all extremities," and had unlimited range of motion.
   (AR 816-17.)

28

404, 412) (and similarly, Dr. Lai's January 2013 opinion reflects somewhat greater limitations than his June 2009 opinion (compare AR 507 with AR 786)), Dr. Lai never altered his treatment of Plaintiff.  Rather, Plaintiff continued to undergo regular trigger-point injections, primarily in her shoulder and neck muscles, which consistently reduced her pain from a six to a two out of 10.  (See AR 659 (Oct. 2010, levator scapulae),[16] 663 (Nov. 2010, levator scapulae and "SCM" (presumably, sternocleidomastoid)),[17] 665 (Dec. 2010, "SCM"), 667 (Dec. 2010, "SCM" and "splenius capitus"),[18] 669 (Dec. 2010, SCM, "splenius capitus," and "levator scap"), 671 (Jan. 2011, "levator scap" and trapezius),[19] 776 (Feb. 2011, thoracic paraspinal and trapezius), 780 (Mar. 2011, right-cervical paraspinal and trapezius), 845 (Apr. 2011, "splenius capitus" and trapezius), 844 (Apr. 2011, "splenius capitus" and trapezius), 843 (May 2011, "splenius capitus" and trapezius), 837 (June 2011, trapezius), 835 (July 2011, trapezius), 834 (Aug. 2011, trapezius and "SCM"), 833 (Sept. 2011, "splenius capitus"), 832 (Sept. 2011, "splenius capitus"), 831 (Sept. 2011, thoracic paraspinal and "splenius capitus"), 830 (Sept. 2011, thoracic paraspinal), 829 (Oct. 2011, thoracic paraspinal and trapezius), 826 (Nov. 2011, thoracic

---

[16]   The levator scapulae is one of the muscles of the shoulder.  See Stedman's Medical Dictionary 1149 (27th ed. 2000).

[17]   The sternocleidomastoid is one of the muscles of the neck.  See id. at 1156.

[18]   The splenius capitis is also one of the muscles of the neck.  See id. at 1155.

[19]   The trapezius is one of the shoulder muscles.  See id. at 1158.

paraspinal and trapezius), 825 (Nov. 2011, trapezius), 824 (Nov. 2011, trapezius and cervical paraspinal), 821 (Dec. 2011, trapezius and cervical paraspinal), 820 (Dec. 2011, paraspinal), 815 (Feb. 2012, paraspinal), 812 (May 2012, trapezius), 811 (June 2012, trapezius and levator scapulae), 810 (July 2012, trapezius and levator scapulae), 809 (July 2012, lumbar and thoracic paraspinal), 807 (Aug. 2012, trapezius and levator scapulae), 804 (Aug. 2012, trapezius and levator scapulae), 804 (Aug. 2012, trapezius and levator scapulae), 803 (Sept. 2012, trapezius and levator scapulae), 802 (Sept. 2012, trapezius and levator scapulae), 801 (Sept. 2012, trapezius and levator scapulae), 800 (Oct. 2012, trapezius and "splenius capitus"), 797 (Oct. 2012, trapezius and "splenius capitus"), 794 (Nov. 2012, "SCM"), 793 (Nov. 2012, "SCM"), 792 (Nov. 2012, trapezius), 788 (Dec. 2012, cervical, "levator scap," and paraspinal), 787 (Jan. 2013, "SCMI"); see also Kellner, 2013 WL 3200581, at *4-9 (summarizing medical evidence predating amended onset date)).  She underwent occipital-nerve injections in January, June, July, and September 2011 and March, July, October, and December 2012; those injections also reduced her pain from a six to a two out of 10. (AR 772, 789, 797, 808, 813, 831, 832, 836, 840.)  And Plaintiff underwent radio-frequency thermal coagulations[20] of various parts of her spine every few months.  (AR 841 (May 2011, left lumbar

---

[20] Radiofrequency procedures use high-frequency alternating current to cause heat in the target tissues, which results in coagulation, or a thermal lesion, that disrupts the transmission of pain signals.  William Rea et al., Radiofrequency therapies in chronic pain, 11 Continuing Educ. in Anaesthesia, Critical Care & Pain, no. 2, 2011, at 35-38, available at http://ceaccp.oxfordjournals.org/content/11/2/35.full.

1  facet joint), 838 (June 2011, right lumbar facet joint), 657-58
2  (Oct. 2010, right cervical facet joint), 773-75, 778-79 (Feb.
3  2011, right and left thoracic facet joint), 822 (Dec. 2011, left
4  cervical facet joint), 818 (Jan. 2012, right cervical facet
5  joint), 805 (Aug. 2012, left lumbar facet joint), 795-96, 798
6  (Oct. 2012, left cervical and right lumbar facet joint), 790-91
7  (Dec. 2012, right cervical facet joint).)  Dr. Lai consistently
8  noted that those treatments were effective and resulted in
9  lasting pain reduction and improved range of motion.  (See, e.g.,
10 AR 657, 818 (noting that previous cervical facet-joint injections
11 had provided "3-4 months of relief of axial neck pain and
12 numbness with better neck pain and [range of motion]"), 841
13 (noting that previous lumbar-facet radio-frequency thermal
14 coagulation "provided 70% better axial back pain and spasms for
15 over 14 months").)  The ALJ did not err in discounting Dr. Lai's
16 opinion because it was not supported by his treatment notes.

17      The ALJ was also entitled to rely on the opinions of Dr.
18 Jensen, the medical expert who testified in the proceeding before
19 the first ALJ (AR 29), as well as the two medical consultants,
20 Drs. Kalmar and Hartman (AR 28).  As discussed in this Court's
21 previous decision, see Kellner, 2013 WL 3200581, at *8-9, *11,
22 Dr. Jensen's opinion was supported by the objective medical
23 evidence, he reviewed all of the medical evidence up to the date
24 of the first hearing, and he testified at the hearing.  Thomas v.
25 Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of
26 non-treating or non-examining physicians may also serve as
27 substantial evidence when the opinions are consistent with
28 independent clinical findings or other evidence in the record.");

Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it" (citing Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995))); see § 416.927(c)(4) (ALJ will generally give more weight to opinions that are "more consistent . . . with the record as a whole"); Andrews, 53 F.3d at 1042 (greater weight may be given to nonexamining doctors who are subject to cross-examination). Drs. Kalmar and Hartman, moreover, also reviewed Plaintiff's medical records, including some of the updated treatment records showing a radio-frequency thermal coagulation and trigger-point injections (AR 767, 782, 784), and rendered opinions that were largely consistent with Dr. Jensen's (see AR 748-52, 766-68, 782-84).

Plaintiff argues that because Drs. Jensen, Kalmar, and Hartman didn't review the "treatment pattern" consisting of trigger-point and occipital-nerve injections and thermal coagulations, the ALJ should not have relied on their opinions over Dr. Lai's. (J. Stip. at 10.) But Plaintiff acknowledges that Drs. Kalmar and Hartman reviewed some of the newer records showing treatment with radio-frequency thermal coagulation and trigger-point injections. (Id. (stating that Dr. Kalmar "reviewed only one record arguably outside of the previously adjudicated period" and Dr. Hartman "reviewed records showing three trigger point injections in the first quarter of 2011").) And in any event, as the ALJ found (AR 28-29), Plaintiff's treatment after October 2010 was essentially the same as the

treatment she received before the first ALJ rendered his decision, see Kellner, 2013 WL 3200581, at *6-8 (summarizing Dr. Lai's treatment with epidural steroid, facet, and trigger-point injections and radio-frequency thermal coagulation), and no later physical testing or examinations revealed any new findings. As such, the ALJ did not err in relying on the opinions of Drs. Jensen, Kalmar, and Hartman.

In sum, Plaintiff has shown, at most, that the medical evidence could have been interpreted differently, which is insufficient to warrant reversal. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Plaintiff is not entitled to remand.

**VI.  CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[21] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 2, 2015

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[21]  That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."